

**U.S. Department of Justice**

FILED
U.S. DISTRICT COURT *United States Attorney*
DISTRICT OF MARYLAND *District of Maryland*

2019 OCT 21 AM 8:06

| | | |
|---|---|---|
| *Jeffrey J. Izant* | *36 South Charles Street* | *DIRECT: 410-209-4982* |
| *Assistant United States Attorney* | *Suite 400* | *MAIN: 410-209-4800* |
| *jeffrey.izant@usdoj.gov* | *Baltimore, MD 21201-3119* | *FAX: 410-962-0716* |

CLERK'S OFFICE
AT BALTIMORE

BY_____ DEPUTY
August 9, 2019

Andrew R. Szekely, Esq.
Assistant Federal Public Defender
Office of the Federal Public Defender
100 S. Charles Street, Tower II, 9th Floor
Baltimore, Maryland 21201
andrew_szekely@fd.org

## BY ELECTRONIC AND INTEROFFICE MAIL

Re:     United States v. Bilal Mohammad Siddiqui, Criminal No. CCB-19-0322

Dear Counsel:

This letter, together with the Sealed Supplement, confirms the plea agreement (the "Agreement") that has been offered to your client, Bilal Mohammad Siddiqui (hereinafter the "Defendant"), by the United States Attorney's Office for the District of Maryland (the "Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by **Tuesday, September 3, 2019**, it will be deemed withdrawn. The terms of the Agreement are as follows:

### Offenses of Conviction

1.     The Defendant agrees to waive indictment and plead guilty to Counts One and Two of the Criminal Information, charging the Defendant with sexual exploitation of children, in violation of 18 U.S.C. § 2251(a), and Count Three of the Criminal Information, charging the Defendant with cyberstalking, in violation of 18 U.S.C. § 2261A(2)(b). The Defendant admits that the Defendant is, in fact, guilty of the offenses, and will so advise the Court.

### Elements of the Offense(s)

2.     The elements of the offenses to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows.

### Counts One and Two:  Sexual Exploitation of Children

a.     That, on or about the dates alleged in the Criminal Information, in the District of Maryland –

Rev. August 2018

i.      The Defendant used, employed, persuaded, induced, enticed, or coerced the victim identified in the Criminal Information to take part in sexually explicit conduct for the purpose of producing a visual depiction of that conduct;

ii.      The victim identified in the Criminal Information was under the age of 18; and

iii.      The visual depiction –

1.      was produced or transmitted using materials that had been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer; or

2.      had actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce.

**Count Three:  Cyberstalking**

b.      That, during the time period alleged in the Criminal Information, in the District of Maryland –

i.      The Defendant intended to kill, injure, harass, or intimidate another person;

ii.      The Defendant used the mail, any interactive computer service or electronic communication service or electronic communication system of interstate commerce, or any other facility of interstate or foreign commerce to engage in a course of conduct; and

iii.      The course of conduct caused, attempted to cause, or was reasonably expected to cause substantial emotional distress to that person or an immediate family member.

## Penalties

3.      The penalties provided by statute for each offense to which the Defendant is pleading guilty are as follows:

| Count | Statute | Min. Prison | Max. Prison | Supervised Release | Max. Fine | Special Assessment |
|-------|---------|-------------|-------------|--------------------|-----------|--------------------|
| One | 18 U.S.C. § 2251(a), (e) | 15 years | 30 years | Min: 5 years Max: life | $250,000 | 18 U.S.C. § 3013(a): $100; 18 U.S.C. § 3014(a): $5,000 |
| Two | 18 U.S.C. § 2251(a), (e) | 15 years | 30 years | Min: 5 years Max: life | $250,000 | 18 U.S.C. § 3013(a): $100; 18 U.S.C. § 3014(a): $5,000 |

Rev. August 2018

2

| Count | Statute | Min. Prison | Max. Prison | Supervised Release | Max. Fine | Special Assessment |
|-------|---------|-------------|-------------|--------------------|-----------| -------------------|
| Three | 18 U.S.C. §§ 2261A(2)(b), 2261(b)(5) | N/A | 5 years | Max: 3 years | $250,000 | 18 U.S.C. § 3013(a): $100 |

a.    *Prison*:  If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

b.    *Supervised Release*:  If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

c.    *Restitution*:  The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 2259, 3663, 3663A, and 3664.

d.    *Payment*:  If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d).  The Defendant may be required to pay interest if the fine is not paid when due.

e.    *Forfeiture*:  The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

f.    *Collection of Debts*:  If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt.  If the Court establishes a schedule of payments, the Defendant agrees that: (i) the full amount of the fine or restitution is nonetheless due and owing immediately; (ii) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (iii) the United States may fully employ all powers to collect on the total amount of the debt as provided by law.  Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control.  Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns.  The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

**Waiver of Rights**

4.    The Defendant understands that, by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

Rev. August 2018

     a.     The Defendant has the right to have the case presented to a Grand Jury, which would decide whether there is probable cause to return an indictment against the Defendant. By agreeing to proceed by way of Criminal Information, the Defendant is giving up that right, and understands that the charges will be filed by the United States Attorney without the Grand Jury.

     b.     If the Defendant had pleaded not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

     c.     If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

     d.     If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

     e.     The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that it could not draw any adverse inference from the Defendant's decision not to testify.

     f.     If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed that would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

     g.     By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" provisions below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

Rev. August 2018

h.      If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced case, and the Court will find the Defendant guilty.

i.      By pleading guilty, the Defendant also will be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that, if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

5.      The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551–3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991–98. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

6.      This Office and the Defendant (collectively, the "Parties") stipulate and agree to the Statement of Facts set forth in Attachment A (including Attachment A-1 and Attachment A-2 thereto), which is incorporated by reference herein.

### Group 1 / Count One: Sexual Exploitation of Jane Doe 1

a.      The Parties further agree that, pursuant to United States Sentencing Guidelines ("U.S.S.G.") §2G2.1(a), the applicable base offense level for Count One is **32**.

b.      The Parties further agree that, pursuant to U.S.S.G. §2G2.1(b)(1)(A), there is a **4**-level increase because the offense involved a minor who had not attained the age of twelve years. [Subtotal: 36.]

c.      The Parties further agree that, pursuant to U.S.S.G. §2G2.1(b)(2)(A), there is a **2**-level increase because the offense involved the commission of a sexual act or sexual contact. [Subtotal: 38.]

d.      The Parties further agree that, pursuant to U.S.S.G. §2G2.1(b)(6)(B)(ii), there is a **2**-level increase because the offense involved the use of a computer or an interactive computer service to solicit participation by a minor in sexually explicit conduct for the purpose of producing sexually explicit material or for the purpose of transmitting such material live. [Subtotal: 40.]

e.      Accordingly, the offense level for Count One is **40**.

### Group 2 / Count Two: Sexual Exploitation of Jane Doe 2

f.      This Office and the Defendant further agree that, pursuant to U.S.S.G. §2G2.1(a), the applicable base offense level for Count Two is **32**.

g.      The Parties further agree that, pursuant to U.S.S.G. §2G2.1(b)(1)(A), there is a **4**-level increase because the offense involved a minor who had not attained the age of twelve years.  [Subtotal: 36.]

h.      The Parties further agree that, pursuant to U.S.S.G. §2G2.1(b)(2)(A), there is a **2**-level increase because the offense involved the commission of a sexual act or sexual contact. [Subtotal: 38.]

i.      The Parties further agree that, pursuant to U.S.S.G. §2G2.1(b)(4)(A), there is a **4**-level increase because the offense involved material that portrays sadistic or masochistic conduct or other depictions of violence.  [Subtotal: 42.]

j.      The Parties further agree that, pursuant to U.S.S.G. §2G2.1(b)(6)(B)(ii), there is a **2**-level increase because the offense involved the use of a computer or an interactive computer service to solicit participation by a minor in sexually explicit conduct for the purpose of producing sexually explicit material or for the purpose of transmitting such material live. [Subtotal: 44.]

k.      Accordingly, the offense level for Count Two is **44**.

### Group 3 / Relevant Conduct: Sexual Exploitation of Jane Doe 3

l.      The Statement of Facts set forth in Attachment A to this Agreement specifically establishes the commission of additional offenses other than those to which the Defendant has agreed to plead guilty. This Office and the Defendant further agree that, pursuant to U.S.S.G. §§1B1.2(c) and 2G2.1(d)(1), the additional offenses are treated as if the Defendant had been convicted of additional counts charging those offenses.

m.      The Parties further agree that, pursuant to U.S.S.G. §2G2.1(a), the applicable base offense level for the sexual exploitation of Jane Doe 3 is **32**.

Rev. August 2018

6

n.      The Parties further agree that, pursuant to U.S.S.G. §2G2.1(b)(1)(A), there is a **4**-level increase because the offense involved a minor who had not attained the age of twelve years. [Subtotal: 36.]

o.      The Parties further agree that, pursuant to U.S.S.G. §2G2.1(b)(6)(B)(ii), there is a **2**-level increase because the offense involved the knowing misrepresentation of a participant's identity to persuade, induce, entice, coerce, or facilitate the travel of, a minor to engage in sexually explicit conduct; and the use of a computer or an interactive computer service to solicit participation by a minor in such conduct for the purpose of producing sexually explicit material or for the purpose of transmitting such material live. [Subtotal: 38.]

p.      Accordingly, the offense level for the Defendant's relevant conduct with respect to Jane Doe 3 is **38**.

### Group 4 / Relevant Conduct: Sexual Exploitation of Jane Doe 4

q.      This Office and the Defendant further agree that, pursuant to U.S.S.G. §2G2.1(a), the applicable base offense level for the sexual exploitation of Jane Doe 4 is **32**.

r.      The Parties further agree that, pursuant to U.S.S.G. §2G2.1(b)(1)(A), there is a **4**-level increase because the offense involved a minor who had not attained the age of twelve years. [Subtotal: 36.]

s.      The Parties further agree that, pursuant to U.S.S.G. §2G2.1(b)(2)(A), there is a **2**-level increase because the offense involved the commission of a sexual act or sexual contact. [Subtotal: 38.]

t.      The Parties further agree that, pursuant to U.S.S.G. §2G2.1(b)(3), there is a **2**-level increase because the Defendant knowingly engaged in distribution. [Subtotal: 40.]

u.      The Parties further agree that, pursuant to U.S.S.G. §2G2.1(b)(4)(A), there is a **4**-level increase because the offense involved material that portrays sadistic or masochistic conduct or other depictions of violence. [Subtotal: 44.]

v.      This Office and the Defendant further agree that, pursuant to U.S.S.G. §2G2.1(b)(6)(B), there is a **2**-level increase because the offense involved the knowing misrepresentation of a participant's identity to persuade, induce, entice, coerce, or facilitate the travel of, a minor to engage in sexually explicit conduct; and the use of a computer or an interactive computer service to solicit participation by a minor in such conduct for the purpose of producing sexually explicit material or for the purpose of transmitting such material live. [Subtotal: 46.]

w.      Accordingly, the offense level for the Defendant's relevant conduct with respect to Jane Doe 4 is **46**.

### Group 4 / Count Three:  Cyberstalking of Jane Doe 4

x.    This Office and the Defendant further agree that, pursuant to U.S.S.G. §2A6.2(a), the applicable base offense level for Count Three is **18**.

y.    The Parties further agree that, pursuant to U.S.S.G. §2A6.2(b)(1)(E), there is a **2**-level increase because the offense involved a pattern of activity involving stalking, threatening, harassing, or assaulting the same victim.  [Subtotal: 20.]

z.    Accordingly, the offense level for Count Three is **20**.

### Group 5 / Relevant Conduct:  Sexual Exploitation of Jane Doe 5

aa.    This Office and the Defendant further agree that, pursuant to U.S.S.G. §2G2.1(a), the applicable base offense level for the sexual exploitation of Jane Doe 5 is **32**.

bb.    The Parties further agree that, pursuant to U.S.S.G. §2G2.1(b)(1)(B), there is a **2**-level increase because the offense involved a minor who had attained the age of twelve years but not attained the age of sixteen years.  [Subtotal: 34.]

cc.    The Parties further agree that, pursuant to U.S.S.G. §2G2.1(b)(6)(B)(ii), there is a **2**-level increase because the offense involved the knowing misrepresentation of a participant's identity to persuade, induce, entice, coerce, or facilitate the travel of, a minor to engage in sexually explicit conduct; and the use of a computer or an interactive computer service to solicit participation by a minor in such conduct for the purpose of producing sexually explicit material or for the purpose of transmitting such material live.  [Subtotal: 36.]

dd.    Accordingly, the offense level for the Defendant's relevant conduct with respect to Jane Doe 5 is **36**.

### Group 6 / Relevant Conduct:  Sexual Exploitation of Jane Doe 6

ee.    This Office and the Defendant further agree that, pursuant to U.S.S.G. §2G2.1(a), the applicable base offense level for the sexual exploitation of Jane Doe 6 is **32**.

ff.    The Parties further agree that, pursuant to U.S.S.G. §2G2.1(b)(1)(B), there is a **2**-level increase because the offense involved a minor who had attained the age of twelve years but not attained the age of sixteen years.  [Subtotal: 34.]

gg.    The Parties further agree that, pursuant to U.S.S.G. §2G2.1(b)(6)(B)(ii), there is a **2**-level increase because the offense involved the knowing misrepresentation of a participant's identity to persuade, induce, entice, coerce, or facilitate the travel of, a minor to engage in sexually explicit conduct; and the use of a computer or an interactive computer service

to solicit participation by a minor in such conduct for the purpose of producing sexually explicit material or for the purpose of transmitting such material live. [Subtotal: 36.]

hh.     Accordingly, the offense level for the Defendant's relevant conduct with respect to Jane Doe 6 is **36**.

## Grouping

ii.     This Office and the Defendant further agree that, pursuant to U.S.S.G. §3D1.2(d), and §2G2.1(d)(1), cmt. n.7, none of the offenses described above are subject to grouping, with the exception of the Defendant's sexual exploitation and cyberstalking of Jane Doe 4, which offenses are grouped together pursuant to §3D1.2(b).

jj.     The Parties further agree that, pursuant to U.S.S.G. §3D1.3(a) and §3D1.4, the starting point for calculating the combined offense level is **46**—the offense level for Group 4.

kk.     The Parties further agree that, pursuant to U.S.S.G. §3D1.4(a), Groups 2 and 4 are each assigned 1 Unit; and Groups 1 and 3 are each assigned ½ Unit. Because there are, therefore, a total of 3 Units, there is a **3**-level increase in the combined offense level.

ll.     Accordingly, the combined offense level is **49**.

## Acceptance of Responsibility

mm.    This Office does not oppose a **2**-level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. §3E1.1(a), based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. §3E1.1(b) for an additional **1**-level decrease, in recognition of the Defendant's timely notification of the Defendant's intention to enter a plea of guilty. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. §3E1.1(a) and may decline to make a motion pursuant to U.S.S.G. §3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offenses; (iii) gives conflicting statements about the Defendant's involvement in the offenses; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way. [Subtotal: 46.]

## Repeat and Dangerous Sex Offender Against Minors

nn.     This Office and the Defendant further agree that, pursuant to U.S.S.G. §4B1.5(b)(1), there is a **5**-level increase because the Defendant engaged in a pattern of activity involving prohibited sexual conduct and the Defendant's sexual exploitation of Jane Doe 1 and Jane Doe 2 are covered sex crimes, and neither U.S.S.G. §4B1.1 nor §4B1.5(a) apply. [Subtotal: 51.]

Rev. August 2018

oo.     This Office and the Defendant further agree that, pursuant to U.S.S.G. Ch. 5, Pt. A, cmt. n.2, the final combined offense level is **43**.

7.      There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

8.      Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

## Rule 11(c)(1)(C) Plea

9.      This Office and the Defendant stipulate and agree pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure that a sentence of **no greater than 360 months (i.e., 30 years) imprisonment** in the custody of the Bureau of Prisons is the appropriate disposition of this case, taking into consideration the nature and circumstances of the offense, the Defendant's criminal history, and all of the other factors set forth in 18 U.S.C. § 3553(a). This Agreement does not affect the Court's discretion to impose any lawful term of supervised release or fine or to set any lawful conditions of supervised release. In the event that the Court rejects this Agreement, except under the circumstances noted below, either party may elect to declare the Agreement null and void. Should the Defendant so elect, the Defendant will be afforded the opportunity to withdraw the Defendant's plea pursuant to the provisions of Rule 11(c)(5) of the Federal Rules of Criminal Procedure. The parties agree that, if the Court finds that the Defendant engaged in obstructive or unlawful behavior and/or failed to acknowledge personal responsibility as set forth herein, neither the Court nor this Office will be bound by the specific sentence contained in this Agreement, and the Defendant will not be able to withdraw the plea.

## Obligations of the Parties

10.     At the time of sentencing, this Office and the Defendant reserve the right to advocate for a reasonable period of supervised release, and/or fine considering any appropriate factors under 18 U.S.C. § 3553(a). This Office and the Defendant reserve the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office or the Defendant deem relevant to sentencing, including the conduct that is the subject of any counts of the Criminal Information.

## Defendant's Conduct Prior to Sentencing and Breach

11.     Between now and the date of sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. §3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any

Rev. August 2018

statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

12.     If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (a) this Office will be free from its obligations under this Agreement; (b) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C); and (c) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

## No Contact with Jane Does

13.     While incarcerated and throughout the entire term of his imprisonment, the Defendant will not make any contact with, or take any steps whatsoever to locate, any child identified as Jane Doe in the attached Statement of Facts, or any immediate family member thereof. The Defendant agrees to the entry of a Protective Order regarding any contact with any Jane Doe or immediate family member thereof. The Defendant specifically agrees that this provision shall continue following his release and will be part of any supervised release conditions ordered by the Court at the time of sentencing. If the Defendant does not fulfill this provision, it will be considered a material breach of the Agreement, and this Office may seek to be relieved of its obligations thereunder. The Defendant waives and agrees to waive any right to challenge any prosecution based on the statute of limitations or double jeopardy, and knowingly and voluntarily agrees to toll the limitations period through the end of his incarceration and supervised release.

## Restitution

14.     The Defendant agrees that, pursuant to 18 U.S.C. §§ 2259, 3663A, and 3771, the children identified in the Information as Jane Doe 1, Jane Doe 2, and Jane Doe 4 are entitled to mandatory restitution. In exchange for the concessions made by this Office, the Defendant further agrees to the entry of a restitution order for the full amount of the losses incurred by the children identified in Attachment A hereto as Jane Doe 3, Jane Doe 5, and Jane Doe 6 as a result of the offense conduct set forth in Attachment A. Restitution could include medical bills, compensation for time missed from work, and counseling costs (including travel related thereto) for any of the above-identified victims, if any such costs exist or are reasonably projected.

Rev. August 2018

15.     The Defendant further agrees that the total amount of restitution shall be due immediately and shall be ordered to be paid forthwith. Any payment schedule imposed by the Court establishes only a minimum obligation. The Defendant hereby agrees to make a good faith effort to pay any restitution ordered. Regardless of the Defendant's compliance, however, any payment schedule does not limit the United States' ability to collect additional amounts from the Defendant through all available collection remedies at any time.

16.     The Defendant further agrees that the Defendant will fully disclose to this Office, the probation officer, and to the Court, subject to the penalty of perjury, all information (including but not limited to copies of all relevant bank and financial records) regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the Statement of Facts attached hereto. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill his restitution obligations, it will be considered a material breach of this Agreement, and this Office may seek to be relieved of its obligations under this Agreement.

## Forfeiture

17.     The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offense(s), substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offense(s).

a.      Specifically, but without limitation on the Government's right to forfeit all property subject to forfeiture as permitted by law, the Defendant agrees to forfeit to the United States all of the Defendant's right, title, and interest in the following items that the Defendant agrees constitute money, property, and/or assets derived from or obtained by the Defendant as a result of, or used to facilitate the commission of, the Defendant's illegal activities:

i.      Apple iPhone, Model A1332, FCC ID: BCG-E23808; and

ii.     Apple MacBook Air, Model: A1466, SN: C02Q29Q6G940.

b.      The Defendant agrees to consent to the entry of an Orders of Forfeiture for the property described in the above subparagraph and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding forfeiture during the change of plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

c.      The Defendant agrees to assist fully in the forfeiture of the above property. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

18.     The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint.  The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement, and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

### Sex Offender Registration and Additional Special Assessment

19.     The Defendant understands and agrees that, as a consequence of the Defendant's conviction for the crimes to which the Defendant is pleading guilty, the Defendant will be required to register as a sex offender in the place where the Defendant resides, is an employee, and is a student, pursuant to the Sex Offender Registration and Notification Act ("SORNA"), and the laws of the state of the Defendant's residence.  Failure to do so may subject the Defendant to new charges pursuant to 18 U.S.C. § 2250.

20.     The Defendant must also pay an additional special assessment of $10,000 pursuant to 18 U.S.C. § 3014, unless the Defendant is indigent.

### Waiver of Appeal

21.     In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

a.     The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever.  This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute, to the extent such challenges legally can be waived.

b.     The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal a sentence imposed in accordance with Paragraphs 9, 14, and 17 of this Agreement (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows:

i.     The Defendant reserves the right to appeal any sentence that exceeds the statutory maximum; and

ii.     This Office reserves the right to appeal any sentence below a statutory minimum.

Rev. August 2018

22.     The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned case and agrees not to file any request for documents from this Office or any investigating agency.

## Consequences of Vacatur, Reversal, or Set-Aside

23.     If a conviction entered pursuant to this Agreement is vacated, reversed, or set aside for any reason, then this Office will be released from its obligations under this Agreement, and any prosecution that is not time-barred as of the date of the signing of this Agreement (including any counts this Office has agreed to dismiss) may be commenced or reinstated against the Defendant, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement or reinstatement of such prosecution. The Defendant agrees to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date this Agreement is signed, and any applicable statute of limitations will be tolled from the date of this Agreement until 120 days after the vacatur, reversal, or set aside becomes final. The Defendant waives any defenses based on double jeopardy, pre-indictment delay, or the Speedy Trial Act *as to any time between the signing of this Agreement and the reinstatement of any prosecution. The Defendant reserves a defense based on the* **Court Not a Party** *Speedy Trial Act as to any time following the re-filing of criminal charges to this prosecution.*

*AS/BS*
*ZAM*

24.     The Defendant expressly understands that the Court is not a party to this Agreement. In the federal system, the sentence is imposed by the Court, and the Court is under no obligation to accept this Agreement. In the event the Court rejects this Rule 11(c)(1)(C) plea agreement, pursuant to Rule 11(c)(5)(C), the Defendant will be informed that the Defendant may withdraw the plea. If the Defendant persists in the guilty plea thereafter, the Defendant understands that the disposition of the case may be less favorable than that contemplated by this Agreement. The Defendant understands that neither this Office, the Defendant's attorney, nor the Court can make a binding prediction or promise that the Court will accept this Agreement. The Defendant agrees that no one has made such a binding prediction or promise.

## Entire Agreement

25.     This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties, and approved by the Court.

Rev. August 2018

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Sincerely,

Robert K. Hur
United States Attorney

By:

Jeffrey J. Izant
Paul E. Budlow
Assistant United States Attorneys

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

9/29/19
Date

Bilal Mohammad Siddiqui

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement, with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

9/29/19
Date

Andrew R. Szekely, Esq.

Rev. August 2018

15

**ATTACHMENT A**
**STATEMENT OF FACTS**

*The undersigned parties stipulate and agree that, if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

Bilal Mohammad Siddiqui ("Siddiqui," or the "Defendant"), age 22, was an undergraduate studying Information Systems at the University of Maryland, Baltimore County, and a resident of Catonsville, Maryland.

Between April 2017 and August 2018, the Defendant used internet-based communication services LiveMe, Snapchat, Kik, and FaceTime to coerce at least six minor females, ages 8 to 14, into creating and sending him sexually explicit images and videos of themselves. The Defendant also attempted to sexually extort one of those victims, a sixth grader. When she refused to produce additional sexually explicit videos of herself, he sent images and videos that she had previously shared with him to her sixth-grade classmates and friends.

**Siddiqui's Sexual Exploitation of Jane Doe 1 and Jane Doe 2 (Counts 1 and 2)**

Prior to September 2017, the Defendant created a fake account on LiveMe, a mobile application that allows users to stream live video over the internet and simultaneously chat with viewers. The Defendant's account was fake because he created an anonymous username and utilized a photograph of a young boy as his profile picture, so that other users would not realize he was an adult male. One of the users misled by the Defendant was Jane Doe 1, an 8-year-old prepubescent female living in Dallas, Texas.

On September 28, 2017, Jane Doe 1 was using LiveMe to broadcast a video of herself exercising in her pajamas. The Defendant was among several LiveMe users watching the broadcast, which was open to the public. When a number of those viewers asked Jane Doe 1 to show them her underwear, she refused. She eventually terminated the broadcast. Not long after, however, Jane Doe 1 began streaming a new LiveMe broadcast, and a number of her earlier broadcast viewers—including the Defendant—followed her to the new broadcast. During the new broadcast, Jane Doe 1 told her viewers that she was 13 years old. Again, they enticed her to undress and expose herself. The Defendant, in particular, asked Jane Doe 1 to take off her shirt, to "ben[d] over," and to "show her behind." While she initially refused their requests, Jane Doe 1 eventually did what the Defendant and other viewers asked. Jane Doe 1 undressed and exposed her genitals to the camera in response to directions from her viewers, including the Defendant. She touched her bare chest and genitals, and used her fingers to spread her vagina. She also exposed her vagina to the camera in a manner that made it the focal point of the video.

Toward the end of Jane Doe 1's broadcast, the Defendant persuaded her to end her live stream and to contact him privately. The Defendant then began communicating with Jane Doe 1 via FaceTime, a iPhone-based video-chat application. During these video chats, Jane Doe 1 again told the Defendant that she was 13 years old. The Defendant nonetheless instructed her to remove

1

her shirt, pants, and underwear, making her genitalia visible to him. The Defendant then instructed Jane Doe 1 to use a marker to write "B-I-L-A-L"—his first name—on her skin next to her genitalia. Lastly, the Defendant instructed Jane Doe 1 to send him pictures of herself and her genitalia via text message. She complied with his instruction, and sent the Defendant at least one picture of herself. That picture depicts Jane Doe 1 spreading her legs in a manner that exposed her vagina; it also depicts her left hand touching her vagina and spreading it open. The Defendant then told Jane Doe 1 to delete the pictures and their conversation from her electronic device.

After viewers of Jane Doe 1's LiveMe broadcast reported the public conduct described above to the National Center for Missing and Exploited Children, law enforcement eventually identified the Defendant as the person who persuaded Jane Doe 1 to chat privately, and obtained a search warrant for his Catonsville residence. On September 5, 2018, officers executed the search warrant and located the iPhone—Model A1332, FCC ID: BCG-E23808—that the Defendant used to communicate with Jane Doe 1.

The Defendant was present during the search, waived his <u>Miranda</u> rights, and voluntarily agreed to be interviewed by law enforcement. The Defendant admitted that the iPhone was his, that his iPhone was passcode protected, that he had used LiveMe on the iPhone, and that he created the fake LiveMe profile using a photograph of a former classmate to disguise his identity. Although he initially denied instructing anyone to engage in sexually explicit conduct on LiveMe, the Defendant admitted that he used his fake LiveMe account to communicate with Jane Doe 1, including to direct her to pull down her pants and to show her genitalia to the camera during the above-described broadcast. The Defendant further admitted—after initially denying—that he communicated privately with Jane Doe 1 through FaceTime, including instructing her to write his name next to her genitalia. Finally, the Defendant admitted that he instructed Jane Doe 1 to send him nude images of herself via text message, that she had done so, and that he later instructed her to delete the images and their conversation. The Defendant stated that he believed Jane Doe 1 was 13 years old.

While the Defendant was being interviewed, law enforcement conducted an on-scene forensic review of the iPhone the Defendant used to communicate with Jane Doe 1. During the forensic review, officers discovered evidence that the Defendant had also sexually exploited Jane Doe 2, a 9-year-old prepubescent female living in Greensboro, North Carolina. Specifically, officers located a number of video files depicting, among other things, Jane Doe 2 touching her vagina with her hands, inserting a hairbrush into her vagina, and writing "B-I-L-A-L" on her pubic area with a marker. Officers then asked the Defendant about these videos of Jane Doe 2. He admitted that he created the videos and estimated that there were a total of ten videos of Jane Doe 2 engaging in sexually explicit conduct saved on his iPhone. The Defendant explained that he began communicating with Jane Doe 2 in August 2018 using Snapchat, a mobile messaging application, and stated that he had communicated with Jane Doe 2 as recently as September 3, 2018—two days before the search warrant execution. The Defendant admitted that, during those communications, he instructed Jane Doe 2 to touch her vagina, to insert a hairbrush into her vagina, and to write his first name in marker next to her vagina. The Defendant explained that he captured the videos depicting this conduct by using his iPhone's screen-recording function. The Defendant stated that he believed Jane Doe 2 was 11 or 12 years old.

2

Finally, the Defendant was asked whether he had engaged in similar conduct with any other children using the internet or mobile applications. The Defendant estimated that, in total, he had caused more than 10—but fewer than 50—minor females "to do sexual things on video," and that he derived sexual gratification from this conduct.

## Siddiqui's Sexual Exploitation and Cyberstalking of Jane Doe 4 (Count 3)

Following the Defendant's interview, law enforcement sought and obtained records associated with online accounts controlled and used by the Defendant. Those records corroborated the Defendant's admission to having sexually exploited multiple additional children.

Specifically, mobile application records established that the Defendant had coerced Jane Doe 4, an 11-year-old sixth-grader living in South Carolina, into producing and sending him a nude image and nude videos of herself. The Defendant began communicating with Jane Doe 4 on September 15, 2017, and told her that he was 15 years old and lived in her town. Within days, the Defendant had convinced Jane Doe 4 that they were in a romantic relationship, and she revealed the name of the middle school that she was attending.

On October 4, 2017, however, the Defendant began demanding that Jane Doe 4 send him sexually explicit images of her genitals, and—during the approximately 70-minute Snapchat conversation excerpted in **Attachment A-1**—threatened to send one of the videos of Jane Doe 4 to her classmates, friends, and family if she did not produce and send further videos of herself engaging in sexually explicit conduct. The Defendant specifically told Jane Doe 4, "Don't play games with me . . . . I'll expose u [right now] and ruin your life." Jane Doe 4 begged the Defendant not to follow through on his threats and, in response, produced and sent him additional videos that, as per the Defendant's explicit instructions, depicted, among other things: (a) Jane Doe 4's vagina as the focal point; (2) Jane Doe 4 manipulating her vagina with her fingers; and (c) Jane Doe 4 inserting a hairbrush and toothbrush into her vagina—after the Defendant specifically threatened her, saying, "If you don't try shoving it back as far, I'll expose."

After she sent the videos, the Defendant told Jane Doe 4 that it was "too late" because he had already sent them to her friends. Law enforcement, however, did not uncover evidence indicating that the Defendant actually distributed any videos of Jane Doe 4 on October 4, 2017. But three days later, the Defendant did act on his threats. On October 7, 2017, Jane Doe 4 tried to end her relationship with the Defendant before the two engaged in the 40-minute long Snapchat conversation excerpted in **Attachment A-2**. The Defendant reacted to Jane Doe 4's attempt by demanding that Jane Doe 4 immediately produce videos of herself engaging in sexually explicit conduct, writing, "I know you're still going to send the videos because I'll expose u to everyone . . . family and friends," adding, "I know the school u goto."

Although Jane Doe 4 tried to explain that she was unwilling to send videos previously because she was menstruating, the Defendant told her that he did not care, and that her explanation "isn't stopping the timer . . . . I'm gunna expose your ass." The Defendant then specifically instructed Jane Doe 4 to produce videos of her exposing her anus to the camera and inserting a brush into her vagina, and to send them to him using Kik, another mobile messaging application. Jane Doe 4 told the Defendant, "These r to much videos," and asked the Defendant, "Why u treat

3

me like this?"  The Defendant responded "U did this to yourself."  And when Jane Doe 4 begged the Defendant to allow her to send the videos later that night, the Defendant replied, "Too late I don't want it anymore . . . . I'm sending to everyone I'm sick of your fake shit . . . . Bye and let's see how things go now."

Snapchat records then indicate that, on October 8, 2017, the Defendant sent one image and two videos—all three of which depict Jane Doe 4 nude—to two unidentified Snapchat users.  On October 12, 2017, a sixth-grade classmate of Jane Doe 4 alerted the guidance counselor at her middle school that multiple nude photos of Jane Doe 4 were being circulated in a group conversation on Snapchat.  School administrators conducted a brief investigation to ensure that images of Jane Doe 4 had been deleted from students' devices.  Administrators did not, however, contact law enforcement.

**Siddiqui's Sexual Exploitation of Jane Doe 3, Jane Doe 5, and Jane Doe 6 (Relevant Conduct)**

Evidence obtained by investigators further revealed that, between April 2017 and September 2018, the Defendant used Snapchat and Kik to entice at least three additional minor females to produce and send him images and videos of themselves engaging in sexually explicit conduct.  In each instance, the Defendant lied about his real age in the course of inducing the victims to take nude photographs and videos of themselves and their genitalia.

- Jane Doe 3 was an 11-year-old female living in Wisconsin whom the Defendant communicated with using Snapchat in November 2017.  The Defendant told Jane Doe 3 that he was 12 and also lived in Wisconsin.  The Defendant ultimately enticed Jane Doe 3 to send him nude images of herself that depict the lascivious display of her genitals.  The images were later recovered from the Defendant's iPhone.

- Jane Doe 5 was a 12-year-old female living in Ohio whom the Defendant communicated with using Snapchat and Kik in April 2017.  Jane Doe 5 told the Defendant that she was 12, and the Defendant told her that he was 13.  The Defendant ultimately coerced Jane Doe 5 into sending him a video depicting her vagina as the focus.

- Jane Doe 6 was a 14-year-old female living in Texas whom the Defendant communicated with using Snapchat and Kik.  The Defendant began communicating with Jane Doe 6 in September 2017, when she told him that she was 14, and he told her that he was 13.  Jane Doe 6 told the Defendant that she was skeptical of him because she could not find his profile name on any other social media applications, and that she did not want "to be talking to someone who might be a danger to me."  The Defendant told Jane Doe 6 to trust him and persuaded her to send him images and videos depicting the lascivious display of her breasts and vagina.  The Defendant continued sporadically communicating with Jane Doe 6 through September 4, 2018, when the Defendant told Jane Doe 6 that he had to "delete everything."

4

In addition to conducting a forensic search of the Defendant's iPhone, investigators also forensically searched a MacBook Air—Model A1466, Serial Number C02Q29Q6G940—recovered from the Defendant's Catonsville residence. The MacBook, which investigators discovered the Defendant used to store digital backups from his iPhone, contained materials from the Defendant's LiveMe, Kik, and Snapchat accounts, as well as numerous images and videos depicting the abuse and exploitation of suspected children.

The Defendant hereby stipulates and agrees that, during all relevant times, the Defendant was located in the state of Maryland and the children identified herein as Jane Doe were located in states other than Maryland. Accordingly, the visual depictions described above necessarily were transported or transmitted in or affecting interstate or foreign commerce.

The Defendant further stipulates and agrees that the Defendant's iPhone—used in the transmission of the visual depictions described above—was manufactured outside the state of Maryland and, therefore, necessarily consisted of materials that had been mailed, shipped, or transported in or affecting interstate or foreign commerce.

Finally, the Defendant stipulates and agrees that Snapchat is an "interactive computer service or electronic communication service" within the meaning of 18 U.S.C. § 2261A.

SO STIPULATED:

Jeffrey J. Izant
Paul E. Budlow
Assistant United States Attorneys

Bilal Mohammad Siddiqui
Defendant

Andrew R. Szekely, Esq.
Counsel for Defendant

**ATTACHMENT A-1**
**MESSAGES EXCHANGED OCTOBER 4, 2017**

| From | To | Message | Time (UTC) |
|---|---|---|---|
| Siddiqui | Jane Doe 4 | I want to get the videos you promised me and I want to see your pussy | 4:20:41 |
| Siddiqui | Jane Doe 4 | If you do that I won't send it to anyone | 4:20:49 |
| Jane Doe 4 | Siddiqui | Do what | 4:21:10 |
| Siddiqui | Jane Doe 4 | Send me a video of your pussy | 4:21:20 |
| Siddiqui | Jane Doe 4 | Ok I'm sending it to your friends and while school | 4:21:57 |
| Jane Doe 4 | Siddiqui | U PROMISE ME THAT U WASNT GOING TO SHOW ANYONE THE VIDEO | 4:21:59 |
| Jane Doe 4 | Siddiqui | No I'll do it | 4:22:09 |
| Siddiqui | Jane Doe 4 | I wasn't but wtf you can't treat me like that | 4:22:20 |
| Siddiqui | Jane Doe 4 | Send it on kik and I want to see you take your underwear off and touch your pussy | 4:22:45 |
| Jane Doe 4 | Siddiqui | I swear to God I'm sorry | 4:23:07 |
| Siddiqui | Jane Doe 4 | I don't want your fake apology you changed right when I said I'll show everyone | 4:23:18 |
| Siddiqui | Jane Doe 4 | Send me the video and then I won't do it | 4:23:28 |
| Siddiqui | Jane Doe 4 | If I don't get a pussy video in 3 minutes I'm starting by sending it to your friends | 4:23:51 |
| Siddiqui | Jane Doe 4 | I'm counting down hurry | 4:23:55 |
| Jane Doe 4 | Siddiqui | No | 4:24:02 |
| Jane Doe 4 | Siddiqui | Can we talk | 4:24:20 |
| Jane Doe 4 | Siddiqui | Plzzz | 4:24:25 |
| Jane Doe 4 | Siddiqui | Cause I will get in trouble | 4:25:22 |
| Jane Doe 4 | Siddiqui | Cause my mom has every social media app | 4:25:42 |
| Jane Doe 4 | Siddiqui | I am very sorry plzzz don't send | 4:26:34 |
| Siddiqui | Jane Doe 4 | Ok I'm sending it to your friends | 4:27:46 |
| Siddiqui | Jane Doe 4 | Too late | 4:27:49 |
| Jane Doe 4 | Siddiqui | Omg | 4:28:37 |
| Siddiqui | Jane Doe 4 | U have the video? | 4:28:44 |
| Jane Doe 4 | Siddiqui | I'm going to be so embrassed | 4:28:56 |
| Siddiqui | Jane Doe 4 | Do it | 4:29:00 |
| Jane Doe 4 | Siddiqui | I just had it ready | 4:29:05 |
| Siddiqui | Jane Doe 4 | Ok send it NOW! | 4:29:14 |
| Siddiqui | Jane Doe 4 | Send it on kik or else | 4:30:28 |
| Jane Doe 4 | Siddiqui | I show u OK I'm bout to send it u promise not to send it to nun of my friends | 4:31:02 |
| Siddiqui | Jane Doe 4 | Send it now then | 4:31:10 |
| Siddiqui | Jane Doe 4 | I'm counting down | 4:31:15 |
| Siddiqui | Jane Doe 4 | U got 30 seconds | 4:31:23 |
| Jane Doe 4 | Siddiqui | Im bout to send it on snap | 4:31:24 |

1

| From | To | Message | Time (UTC) |
|---|---|---|---|
| Siddiqui | Jane Doe 4 | No | 4:31:27 |
| Siddiqui | Jane Doe 4 | Kik | 4:31:32 |
| Jane Doe 4 | Siddiqui | Cause I just had deleted it an it's going to take a long time to make | 4:32:00 |
| Jane Doe 4 | Siddiqui | Plz on snap | 4:32:12 |
| Siddiqui | Jane Doe 4 | Stfu and send it now! | 4:32:13 |
| Siddiqui | Jane Doe 4 | On kik | 4:32:20 |
| Jane Doe 4 | Siddiqui | On snap | 4:32:28 |
| Jane Doe 4 | Siddiqui | Come on | 4:32:34 |
| Siddiqui | Jane Doe 4 | I'm sending it to your friends | 4:32:51 |
| Siddiqui | Jane Doe 4 | Your dumb asf | 4:32:56 |
| Siddiqui | Jane Doe 4 | You talk way too much | 4:33:01 |
| Jane Doe 4 | Siddiqui | Ok | 4:33:05 |
| Jane Doe 4 | Siddiqui | I sent it to u | 4:36:31 |
| Jane Doe 4 | Siddiqui | U happy | 4:36:40 |
| Siddiqui | Jane Doe 4 | Too late | 4:39:05 |
| Siddiqui | Jane Doe 4 | And I didn't see shit | 4:39:10 |
| Siddiqui | Jane Doe 4 | You're stupid | 4:39:21 |
| Siddiqui | Jane Doe 4 | But face your Pussy towards the light | 4:48:31 |
| Jane Doe 4 | Siddiqui | OK so u not doing to send the video | 4:48:32 |
| Siddiqui | Jane Doe 4 | Open your legs and then take it | 4:48:40 |
| Siddiqui | Jane Doe 4 | No | 4:49:00 |
| Jane Doe 4 | Siddiqui | OK | 4:49:19 |
| Siddiqui | Jane Doe 4 | Your friends have the video thought because you were slow | 4:49:20 |
| Siddiqui | Jane Doe 4 | But not the school | 4:49:26 |
| Siddiqui | Jane Doe 4 | But sent the pussy pic again face your pussy towards the light | 4:49:47 |
| Siddiqui | Jane Doe 4 | And open wide | 4:49:57 |
| Siddiqui | Jane Doe 4 | Hurry | 4:50:43 |
| Siddiqui | Jane Doe 4 | Mmmm that's what I like to see | 4:51:07 |
| Jane Doe 4 | Siddiqui | Plzzz tell me this right | 4:51:12 |
| Siddiqui | Jane Doe 4 | Open your pussy with your fingers | 4:51:16 |
| Jane Doe 4 | Siddiqui | OK is that enough | 4:52:03 |
| Siddiqui | Jane Doe 4 | No! | 4:52:08 |
| Siddiqui | Jane Doe 4 | That pic was too close | 4:52:20 |
| Jane Doe 4 | Siddiqui | OK is this the last one | 4:52:22 |
| Siddiqui | Jane Doe 4 | Open your pussy wide | 4:52:42 |
| Siddiqui | Jane Doe 4 | Mmmmm this is better | 4:53:05 |
| Jane Doe 4 | Siddiqui | OK is this the last | 4:53:12 |
| Siddiqui | Jane Doe 4 | Keep it up and we will soon stop | 4:53:15 |
| Jane Doe 4 | Siddiqui | How many more | 4:53:26 |
| Jane Doe 4 | Siddiqui | Tell me the number | 4:53:41 |

| From | To | Message | Time (UTC) |
|---|---|---|---|
| Siddiqui | Jane Doe 4 | I want a video of you showing your full body and your pussy open | 4:54:01 |
| Jane Doe 4 | Siddiqui | Ok | 4:54:13 |
| Siddiqui | Jane Doe 4 | I'll tell u when I'm done just do it and fast | 4:54:21 |
| Siddiqui | Jane Doe 4 | I want the video on kik | 4:54:35 |
| Jane Doe 4 | Siddiqui | So u want me to take off all my clothes | 4:54:44 |
| Siddiqui | Jane Doe 4 | Yes | 4:54:49 |
| Siddiqui | Jane Doe 4 | Hurry | 4:55:30 |
| Siddiqui | Jane Doe 4 | What's taking so long | 5:00:13 |
| Siddiqui | Jane Doe 4 | Make a Skype right now | 5:00:37 |
| Jane Doe 4 | Siddiqui | OK bout to send it trying to get back into kik | 5:02:06 |
| Siddiqui | Jane Doe 4 | I don't have time | 5:02:07 |
| Jane Doe 4 | Siddiqui | O just take it on my pictures and send it to u | 5:02:36 |
| Siddiqui | Jane Doe 4 | Ok | 5:02:44 |
| Siddiqui | Jane Doe 4 | Hurry | 5:02:55 |
| Siddiqui | Jane Doe 4 | Why're u taking so long | 5:10:41 |
| Siddiqui | Jane Doe 4 | Why're you sending pictures | 5:10:53 |
| Jane Doe 4 | Siddiqui | Idk | 5:10:54 |
| Siddiqui | Jane Doe 4 | I want a video! | 5:11:00 |
| Jane Doe 4 | Siddiqui | O | 5:11:06 |
| Siddiqui | Jane Doe 4 | From up to down and open your pussy in it | 5:11:16 |
| Siddiqui | Jane Doe 4 | Now! | 5:11:23 |
| Jane Doe 4 | Siddiqui | So I got to take off my clothes again | 5:11:26 |
| Siddiqui | Jane Doe 4 | Yes! | 5:11:30 |
| Siddiqui | Jane Doe 4 | No one said to put it back on | 5:11:41 |
| Jane Doe 4 | Siddiqui | R u still going to show all my friends | 5:11:50 |
| Siddiqui | Jane Doe 4 | Not unless u hurry | 5:11:58 |
| Siddiqui | Jane Doe 4 | Some already have it | 5:12:03 |
| Jane Doe 4 | Siddiqui | No | 5:12:07 |
| Jane Doe 4 | Siddiqui | I bout to give it to | 5:12:16 |
| Siddiqui | Jane Doe 4 | 5 | 5:16:21 |
| Siddiqui | Jane Doe 4 | 4 | 5:16:30 |
| Siddiqui | Jane Doe 4 | 3 | 5:16:42 |
| Siddiqui | Jane Doe 4 | 2 | 5:16:50 |
| Jane Doe 4 | Siddiqui | I sent it | 5:16:59 |
| Siddiqui | Jane Doe 4 | 1 | 5:17:01 |
| Siddiqui | Jane Doe 4 | Where? | 5:17:04 |
| Siddiqui | Jane Doe 4 | Don't play games with me | 5:18:17 |
| Siddiqui | Jane Doe 4 | I'll expose u rn and ruin your life | 5:18:30 |
| Jane Doe 4 | Siddiqui | I sented it to u | 5:19:54 |
| Jane Doe 4 | Siddiqui | Can I go to sleep plzzz | 5:20:18 |

3

| From | To | Message | Time (UTC) |
|------|-----|---------|-----------|
| Siddiqui | Jane Doe 4 | Not yet | 5:20:57 |
| Siddiqui | Jane Doe 4 | One more for today | 5:21:01 |
| Jane Doe 4 | Siddiqui | Cause I sent u videos and I'm tired | 5:21:05 |
| Jane Doe 4 | Siddiqui | Ok | 5:21:14 |
| Siddiqui | Jane Doe 4 | Take a long video | 5:21:18 |
| Jane Doe 4 | Siddiqui | What u want it to be | 5:21:21 |
| Siddiqui | Jane Doe 4 | U have a tooth brush? | 5:25:43 |
| Jane Doe 4 | Siddiqui | Yes | 5:25:52 |
| Siddiqui | Jane Doe 4 | Get that | 5:26:00 |
| Jane Doe 4 | Siddiqui | That's the brush | 5:26:26 |
| Jane Doe 4 | Siddiqui | So u want me to stick it in me | 5:26:48 |
| Jane Doe 4 | Siddiqui | I cant do that | 5:27:01 |
| Siddiqui | Jane Doe 4 | Deepthroat that toothbrush for 30 seconds and the hairbrush for 30 seconds and then and then stick both in your pussy | 5:27:06 |
| Siddiqui | Jane Doe 4 | As far in | 5:27:11 |
| Siddiqui | Jane Doe 4 | U better | 5:27:18 |
| Jane Doe 4 | Siddiqui | Ok | 5:27:28 |
| Jane Doe 4 | Siddiqui | I'll try | 5:27:34 |
| Siddiqui | Jane Doe 4 | If u don't try shoving it back as far I'll expose | 5:28:28 |
| Jane Doe 4 | Siddiqui | I tried | 5:28:29 |
| Siddiqui | Jane Doe 4 | Shove both as hard in your mouth and in pussy | 5:29:08 |
| Siddiqui | Jane Doe 4 | The whole video sent has to be 1 minute | 5:29:37 |
| Jane Doe 4 | Siddiqui | Ok | 5:29:43 |
| Siddiqui | Jane Doe 4 | If u don't shove it down your mouth and pussy as far down exposed | 5:29:59 |
| Jane Doe 4 | Siddiqui | OK I will on camera | 5:30:15 |
| Siddiqui | Jane Doe 4 | Ok hurry | 5:30:32 |

4

**ATTACHMENT A-2**
**MESSAGES EXCHANGED OCTOBER 7, 2017**

| From | To | Message | Time (UTC) |
|------|-----|---------|------------|
| Siddiqui | Jane Doe 4 | I know you're still going to send the videos because I'll expose u to everyone | 17:26:35 |
| Siddiqui | Jane Doe 4 | Family and friends | 17:26:39 |
| Siddiqui | Jane Doe 4 | Send the videos right now | 17:26:50 |
| Jane Doe 4 | Siddiqui | I'm still going to send it | 17:26:56 |
| Siddiqui | Jane Doe 4 | Right now | 17:27:02 |
| Jane Doe 4 | Siddiqui | How many | 17:27:06 |
| Jane Doe 4 | Siddiqui | Of what | 17:27:34 |
| Jane Doe 4 | Siddiqui | Tell me so I can hurry | 17:27:56 |
| Siddiqui | Jane Doe 4 | One of you putting the brush in your pussy and another of you opening your ass | 17:28:17 |
| Jane Doe 4 | Siddiqui | Ok | 17:28:26 |
| Siddiqui | Jane Doe 4 | And both videos should be 1 minute | 17:28:31 |
| Jane Doe 4 | Siddiqui | Ok | 17:28:38 |
| Siddiqui | Jane Doe 4 | I want to see your ass hole and then put the brush in | 17:28:47 |
| Siddiqui | Jane Doe 4 | I want to rub my dick to it | 17:33:39 |
|  |  |  |  |
| Siddiqui | Jane Doe 4 | If I don't get these videos in 5 mins I'm gunna ask for 3 videos | 17:35:22 |
| Siddiqui | Jane Doe 4 | Time starts now | 17:35:58 |
| Jane Doe 4 | Siddiqui | Ok | 17:35:58 |
| Jane Doe 4 | Siddiqui | Wait | 17:36:02 |
| Jane Doe 4 | Siddiqui | Ok | 17:36:06 |
| Siddiqui | Jane Doe 4 | Hurry I'm not stopping the time | 17:36:17 |
| Jane Doe 4 | Siddiqui | Can I'll tell you something? | 17:36:27 |
| Siddiqui | Jane Doe 4 | What?! | 17:36:31 |
| Jane Doe 4 | Siddiqui | O have to send something else | 17:36:48 |
| Siddiqui | Jane Doe 4 | Send what? | 17:36:55 |
| Siddiqui | Jane Doe 4 | U talking right now isn't stopping the timer | 17:37:09 |
| Siddiqui | Jane Doe 4 | I'm gunna expose your ass | 17:37:17 |
| Jane Doe 4 | Siddiqui | Cause my period on that's why I didn't send it that night | 17:37:24 |
| Siddiqui | Jane Doe 4 | Idc | 17:37:32 |
| Siddiqui | Jane Doe 4 | Send it | 17:37:34 |
| Jane Doe 4 | Siddiqui | OK my phone charging | 17:38:07 |
| Jane Doe 4 | Siddiqui | Give till three | 17:38:23 |
| Siddiqui | Jane Doe 4 | I don't give a fuck! Send it in 3 minutes or I'll send it to your teachers | 17:38:32 |
| Siddiqui | Jane Doe 4 | I know the school u goto | 17:38:42 |
| Jane Doe 4 | Siddiqui | No | 17:38:42 |
| Jane Doe 4 | Siddiqui | My mom is reading these text messages | 17:39:03 |

1

| From | To | Message | Time (UTC) |
|------|-----|---------|------------|
| Siddiqui | Jane Doe 4 | I don't care | 17:39:11 |
| Jane Doe 4 | Siddiqui | Ok | 17:39:22 |
| Siddiqui | Jane Doe 4 | I'll ask to see her pussy as well | 17:39:23 |
| Siddiqui | Jane Doe 4 | HURRY UP!!! | 17:39:29 |
| Jane Doe 4 | Siddiqui | No | 17:39:36 |
| Jane Doe 4 | Siddiqui | I'll send it | 17:40:01 |
| Siddiqui | Jane Doe 4 | Send me voice notes of you calling yourself a dumb slut that wants to gag on my dick | 17:40:06 |
| Jane Doe 4 | Siddiqui | Ok | 17:40:28 |
| Siddiqui | Jane Doe 4 | Then say u wanna ride my dick and swallow my cum | 17:40:54 |
| Jane Doe 4 | Siddiqui | So u want me to send u voice messages | 17:41:05 |
| Siddiqui | Jane Doe 4 | Yes | 17:41:18 |
| Jane Doe 4 | Siddiqui | On where | 17:41:23 |
| Siddiqui | Jane Doe 4 | On kik | 17:41:35 |
| Siddiqui | Jane Doe 4 | Actually send a video | 17:41:46 |
| Siddiqui | Jane Doe 4 | I want u shirtless while saying it | 17:42:13 |
| Jane Doe 4 | Siddiqui | Why u treat me like this | 17:42:49 |
| Siddiqui | Jane Doe 4 | Then send a video of you spreading your ass | 17:42:52 |
| Siddiqui | Jane Doe 4 | U know why | 17:43:06 |
| Jane Doe 4 | Siddiqui | These r to much videos | 17:43:09 |
| Siddiqui | Jane Doe 4 | U did this to yourself | 17:43:12 |
| Siddiqui | Jane Doe 4 | Do it | 17:43:18 |
| Jane Doe 4 | Siddiqui | How? | 17:43:22 |
| Siddiqui | Jane Doe 4 | 3 minutes | 17:43:25 |
| Siddiqui | Jane Doe 4 | You're lucky I'm not saying pussy | 17:43:36 |
| Jane Doe 4 | Siddiqui | Somebody told me not to go with u but I didn't listen | 17:43:52 |
| Siddiqui | Jane Doe 4 | Hurry get off this and go do it | 17:43:55 |
| Jane Doe 4 | Siddiqui | Ok | 17:44:05 |
| Siddiqui | Jane Doe 4 | GO! | 17:44:16 |
| Jane Doe 4 | Siddiqui | Can u plzz wait tonight to do it plzzz | 17:46:23 |
| Jane Doe 4 | Siddiqui | Plzzzz I'll do it then | 17:46:38 |
| Siddiqui | Jane Doe 4 | Lies lies and lies | 18:06:39 |
| Jane Doe 4 | Siddiqui | I will | 18:06:45 |
| Siddiqui | Jane Doe 4 | Too late I don't want it anymore | 18:06:50 |
| Siddiqui | Jane Doe 4 | I'm sending to everyone I'm sick of your fake shit | 18:07:15 |
| Jane Doe 4 | Siddiqui | I will send it tonight I told u | 18:07:32 |
| Siddiqui | Jane Doe 4 | Bye and let's see how things go now | 18:07:32 |
| Jane Doe 4 | Siddiqui | I'll send it tonight plzzz | 18:07:53 |
| Siddiqui | Jane Doe 4 | Just sent | 18:08:18 |

2