**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| **v.** | * | **CRIMINAL NO. CCB-19-0322** |
| | * | |
| **BILAL MOHAMMAD SIDDIQUI,** | * | |
| | * | |
| **Defendant.** | * | |

*******

**GOVERNMENT'S REPLY TO DEFENDANT'S SENTENCING MEMORANDUM**

The United States of American hereby submits the following reply to the Defendant's Sentencing Memorandum ("Mem."). *See* ECF 53. The Court should emphatically reject the Defendant's effort to analogize his conduct to "sexting" because the Defendant's exploitation of numerous victims here bears no resemblance to sexting. Nor is there any merit in the Defendant's claim that his convictions under 18 U.S.C. § 2251(a) overstate the seriousness of the physical and psychological abuse he inflicted because it was remote. Both within and outside the District of Maryland, defendants who exploit children online are routinely charged with violations of 18 U.S.C. § 2251(a), and these defendants overwhelmingly receive significant sentences of incarceration that are far above the mandatory minimum. The Defendant's request for an extreme downward variance is also not justified by the Defendant's arguments about the guidelines or the applicable § 3553(a) factors. ████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ██████████████████████████████████████████.

Thus, for the following reasons, as well as the reasons set forth in the government's Sentencing Memorandum, *see* ECF 54, the Court should sentence the Defendant to a term of 324 months' (*i.e.*, 27 years') imprisonment, to be followed by lifetime supervised release.

## I.    The Defendant's Conduct Was Not "Sexting."

The Defendant attempts to downplay the severity of his offenses by arguing that his conduct was "[e]ntirely" internet-based "sexting."  Mem. at 5.  Not only does this argument mischaracterize what "sexting" is, but it also ignores the Defendant's truly abhorrent conduct.

### A.    Sexting Is Categorically Different from Child Exploitation.

Sexting is not a crime.  Sexting is "the sharing of sexually explicit images, videos, or messages through electronic means."  Sheri Madigan *et al.*, *Prevalence of Multiple Forms of Sexting Behavior Among Youth*, 172 JAMA Pediatrics 327, 328 (2018), *available at* https://jamanetwork.com/journals/jamapediatrics/fullarticle/2673719.  In attempting to minimize his conduct as sexting, the Defendant's use of the term implies the consensual and non-coercive exchange of sexually explicit materials between legal adults, or possibly between minors.  What the Defendant did was not sexting.  What the Defendant did was coerce and threaten young girls to degrade themselves, produce videos and images of that degradation, and send those materials to the Defendant for his sexual gratification.  Minimizing the Defendant's exploitation as "sexting" is like referring to rape as "intercourse."

The Defendant, a 20- or 21-year-old adult,[1] alternatively enticed and coerced between 10 and 50 children to send him images and videos of themselves engaging in sexually explicit conduct.[2]  Of the seven victims the government was able to identify, four were prepubescent

---

[1] It is unclear why the Defendant's Memorandum repeatedly refers to the Defendant as a 19- or 20-year-old, when the Defendant was 20 and 21 years old at the time of the offenses.  *See* Mem. at 9, 10.

[2] While the case is distinguishable on numerous grounds, this fact alone renders misplaced the Defendant's reliance on *United States v. Weiner*, Crim. No. 17-cr-0307 (S.D.N.Y. 2017), which the Defendant cites for the proposition that sexting offenses "[g]enerally . . . are charged under a less severe statute."  Mem. at 7.  The Defendant in *Weiner* was convicted of violating 18 U.S.C. § 1470, which merely requires the transportation of "obscene matter."  The Defendant does not

minors who were 8, 9, 11, and 11, years old, respectively; the remaining three victims were 12, 13, and 14 years old.  None of these vulnerable girls were legally capable of consenting to the Defendant's conduct—which is precisely why the Defendant's conduct was, by definition, exploitative.  This fundamentally distinguishes the Defendant's offenses from a case like, *United States v. Nash*, the only judicial decision the Defendant cites to support his argument that Congress would not have intended to apply 18 U.S.C. § 2251(a) to "sexting," Mem. at 5.  *See* 1 F. Supp. 3d 1240 (N.D. Ala. 2014) (sentencing 22-year-old who received sexually explicit material from girl who was 16 and had reached legal age of consent in Alabama).

Accordingly, the Defendant did not, as he claims, commit a "terrible act" by "continuing to engage in [sexting] with underage girls after turning eighteen," which suggests that the Defendant is being punished for seeking sexually explicit material from a classmate who had not yet reached her 18th birthday.  Mem. at 6.  The Defendant committed multiple serious federal crimes by exploiting *prepubescent children*—whom the Defendant *believed* were around 11 years old—several *years* after he legally became an adult.  This case, therefore, has nothing to do with sexting, or the rising prevalence of sexting between teenagers.

## B.      The Defendant Exploited and Extorted Children.

Of course, the Defendant did not just cause prepubescent children to produce and send him images and videos of themselves engaging in sexually explicit conduct—even though that fact by itself establishes violations of 18 U.S.C. § 2251(a) and categorically distinguishes this case from "sexting" offenses.  The Defendant's conduct was far worse.

First, the Defendant enticed and coerced prepubescent children to produce images and videos of themselves engaging in demeaning and sadistic sex acts.  The Defendant enticed Jane

---

even allege that *Weiner* involved the depiction of sexually explicit conduct—a necessary element of a violation of 18 U.S.C. § 2251(a).

Doe 1, an 8-year-old, to write his name on the skin next to her genitalia and to use FaceTime to capture herself using the bathroom so that he could watch her urinate.  The Defendant enticed Jane Doe 2, a 9-year-old, to write his name on her pubic area and to insert a hairbrush into her vagina. And the Defendant coerced Jane Doe 4, an 11-year-old, into "deepthroat[ing]" a toothbrush and a hairbrush and then shoving both "as far down" into her vagina as they would go.  The Defendant also forced Jane Doe 4 to expose her anus to him and to record herself "calling yourself a dumb slut that wants to gag on my dick."  These actions were degrading and physically abusive—and, therefore, separate the Defendant's conduct not only from sexting, to which it does not remotely compare, but also from other less aggravated child exploitation cases.

Second, the Defendant committed sextortion as a part of his exploitation of Jane Doe 4, an 11-year-old.  And the Defendant did not just entice Jane Doe 4 to engage in sexually explicit conduct, on several occasions, so that he could produce multiple visual depictions of that conduct; the Defendant used those depictions to extort Jane Doe 4 into engaging in more sadistic and demeaning behavior, and with greater frequency, by threatening to "expose" Jane Doe 4's conduct to her family and friends.[3]  (Of course, this depraved conduct would be criminal even if it were committed by one adult against another.)   But then, when Jane Doe 4 started to resist the Defendant's vicious demands, the Defendant actually disseminated images and videos of Jane Doe 4—in which she was naked and exposing her vagina to the camera—to her sixth grade classmates. Anyone who has raised an adolescent, or has been an adolescent, can appreciate the horror and trauma that Jane Doe 4 suffered because of the Defendant's actions.  In sum, the Defendant

---

[3] The very research cited in the Defendant's Memorandum, *see* Mem. at 6, undercuts his argument that his abuse of Jane Doe 4 falls within the category of teenage sexting.  *See* Madigan, *et al.*, *Prevalence of Multiple Forms of Sexting Behavior Among Youth*, 172 JAMA Pediatrics at 332 ("Moreover, given their relative cognitive naïveté, tweens may be particularly vulnerable to sextortion (ie, nude images and/or videos are used as a form of threat or blackmail).").

exploited Jane Doe 4 sexually, then caused her to engage in demeaning physical abuse, then exacerbated his abuse of Jane Doe 4 through extortion, and then distributed images of his abuse of Jane Doe 4 to numerous other 11-year-olds.  The Defendant's claim that his conduct "was entirely internet-based 'sexting,'" Mem. at 5 (alterations omitted), is as baffling as it is inaccurate.

### C. The Widespread Availability of Internet-Based Communication Tools Is an Aggravating—Rather Than Mitigating—Circumstance.

The Defendant is also wrong to suggest that the proliferation of smartphones, the widespread use of social media applications, and the "prevalence" of sexting are elements of the nature and circumstances of the offense that mitigate the Defendant's conduct.  Mem. at 7.  The fact that growing numbers of children have easier access to the tools that sex offenders like the Defendant use to exploit children is an aggravating, rather than mitigating, circumstance— especially during a global pandemic.  As this prosecution illustrates, these circumstances make it easier for predators like the Defendant to victimize more children.  Unlike so-called "hands-on" offenders, online predators can sexually exploit children anywhere in the country (and the world); they can abuse multiple children at once; and they can hide their conduct through encryption and false identities.  Unlike "hands-on" offenders, online predators can physically abuse young children even when their guardians think they are safely tucked in bed at home.

These circumstances make the Defendant a *greater* danger to the public.  Indeed, the Defendant used encrypted communication tools (like iMessage and FaceTime) and fake social media profiles to simultaneously exploit children all over the United States from the comfort of his home in Maryland.  And the Defendant exploited so many children in this fashion that the best estimate he could provide to law enforcement was that he victimized *somewhere between 10 and 50 minors*.  Therefore, it is critical that the Court's sentence comply with the need to protect the public from repeat and dangerous sex offenders against children like this Defendant.  A mandatory-

minimum sentence would not accomplish that result, nor would it accurate reflect the serious of the Defendant's offenses or promote respect for the law.

## II.   The Defendant Was Appropriately Charged With—and Is Properly Sentenced for—Multiple Violations of 18 U.S.C. § 2251(a).

In addition to mischaracterizing this as a sexting offense, the Defendant argues that a mandatory minimum sentence is appropriate because his 18 U.S.C. § 2251(a) convictions overstate the seriousness of his conduct. *See* Mem. at 8. This argument cannot be reconciled with the nature of his offense, the language of the statute, or the treatment of similarly situated defendants.

### A.   The Defendant's Conduct Represents a Core Violation of § 2251(a).

Citing no authority for the proposition, the Defendant claims that his conduct falls "outside the heartland of conduct generally associated with sexual exploitation cases." Mem. at 8. There is no authority for the Defendant's claim because it is demonstrably untrue.

Section 2251 of Title 18 of the United States Code is titled "Sexual exploitation of children." Subsection (a) establishes criminal penalties for "[a]ny person who employs, uses, persuades, induces, entices, or coerces any minor to engage in . . . sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct," so long as the government proves a federal jurisdictional nexus. 18 U.S.C. § 2251(a). The Defendant here employed, used, persuaded, induced, enticed, and coerced numerous minors to engage in sexually explicit conduct for the purpose of producing and streaming depictions of that conduct. Because the Defendant's sexual exploitation of minors was *exactly* what the statute proscribes, § 2251(a) is the *most* appropriate sanction and, therefore, best establishes the range of punishment that Congress deemed proper.[4]

---

[4] As compared to in-person offenders, the Defendant's sexual exploitation of children in this case falls just as securely—if not more securely—within the core conduct prohibited by § 2251(a). The Defendant did not just use a computer to transmit the visual depictions he produced, or produce

Nothing in § 2251(a) suggests a statutory focus on in-person offenders, nor has the Defendant identified any jurisprudence indicating otherwise.  Indeed, Congress has promulgated a number of other statutes that criminalize actual or intended sexual contact with minors.  *See, e.g.*, 18 U.S.C. §§ 2422, 2423.  The Defendant theoretically could have advocated for a lesser *sentence* by arguing that trauma suffered by victims is greater when they are sexually exploited in person— an argument that would be particularly unpersuasive here, where the Defendant caused physical sexual abuse to multiple victims, including penetrating their genitals with foreign objects, as well as the public humiliation of Jane Doe 4.  But the Defendant's Memorandum advances a more extreme—and, therefore, even less persuasive—argument: that the Defendant's conduct reflects a "new and unique" category of sexual exploitation offenses that are not properly prosecuted under § 2251(a).  Mem. at 6 n.1.

As the following discussion illustrates, the Defendant's conduct is, unfortunately, neither new nor unique.  But there is also no pragmatic basis for reading into § 2251(a) a distinction between in-person offenders and remote abusers like the Defendant.  The evil that Congress sought to avert was the sexual exploitation of children, and § 2251(a) punishes predators who sexually exploit children, which includes those who do so either remotely or in person.  Indeed, the physical and psychological harm that the Defendant inflicted on his victims by causing and then documenting their exploitation would have occurred regardless of where the Defendant was located at the time.  And the continuing harm that results from the documentation of such exploitation exists regardless of whether the exploitation resulted from in-person or virtual coercion.  *See, e.g.*, *Osborne v. Ohio*, 495 U.S. 103, 111 (1990) ("[T]he materials produced by

---

the depiction using a device that was manufactured in interstate commerce—although he did both. The Defendant sexually exploited children *through* facilities of interstate commerce like LiveMe, Snapchat, and Kik.

child pornographers permanently record the victim's abuse" and their "continued existence causes the child victims continuing harm by haunting the children in years to come."); *United States v. Cobler*, 748 F.3d 570, 580 (4th Cir. 2014) ("As a general matter, the prohibition of child pornography derives from a legislative judgment that such materials are harmful to the physiological, emotional, and mental health of children, and that preventing the sexual exploitation of this uniquely vulnerable group 'constitutes a government objective of surpassing importance.'" (quoting *New York v. Ferber*, 458 U.S. 747, 757–58 (1982)).   Moreover, the potential harm to children like Jane Doe 4 is only magnified, when offenders like the Defendant use sextortion as a tool for coercing exploitation in committing § 2251(a) crimes.   *See, e.g.*, U.S. Dep't of Justice, *Nat'l Strategy for Child Exploitation Prevention and Interdiction: A Report to Congress*, 76 (2016) ("[T]he threat of sextortion directed toward children is not just restricted to the immediate sexual and emotional abuse imposed by the offender on their victims.   Sextortion victims engage in cutting, have depression, drop out of school or have their grades decline, as well as engage in other forms of self-harm at an alarming rate.   In fact, a 2015 FBI analysis of 43 sextortion cases revealed at least . . . 28% of these cases had at least one sextortion victim who committed or attempted suicide."), *available at* https://www.justice.gov/psc/file/842411/download.

### B.   Defendants—Like This One—Who Abuse Children Online Are Routinely Charged with Violating § 2251(a) and Usually Receive Sentences Far Beyond the Mandatory Minimum.

In support of the meritless argument that his conduct falls outside the "heartland" of § 2251(a) violations, the Defendant asserts that it is "very rare to charge noncontact defendants under 18 U.S.C. § 2251(a)," Mem. at 5, and that a mandatory minimum sentence is "more than most anyone else convicted of this unique category of offense," *id.* at 6.[5]   The Defendant's

---

[5] According to the defense, "[W]e searched all of the Fourth Circuit production cases available to the Federal Defender's Office and could only pinpoint one case where the defendant pled guilty

8

assertions, unsupported by any citation, are patently untrue.  In this District alone, there are numerous examples of defendants who have been convicted—in just the past three years—of "noncontact" violations of § 2251(a) and sentenced to multi-decade terms of incarceration. Nationwide, there are, sadly, even more such cases.

In *United States v. Steckman*, Crim. No. PWG-18-0162, the defendant, 36, used PlayStation, WhatsApp, and Kik to entice approximately 10 pre-teen to early-teen boys to produce sexually explicit content that included persuading a 13-year-old boy to penetrate his anus with a dildo.  Steckman, like the Defendant in this case, exploited children exclusively online; Steckman also exchanged child abuse material with other offenders online.  Steckman pleaded guilty to violating § 2251(a) (in addition to transporting and possessing child exploitation material) and, on November 7, 2019, was sentenced to 37 years' imprisonment and lifetime supervised release. Unlike the Defendant, Steckman did not engage in sextortion and the Defendant's youngest victims were younger than Steckman's.

In *United States v. Taylor*, Crim. No. DKC-18-0279, the defendant, 33, used Kik to persuade several boys between 13 and 15 years old to send sexually explicit images of themselves and encouraged another adult male to abuse his girlfriend's daughter for the purpose of sending images.  The defendant pleaded guilty to one count of violating § 2251(a) and, on December 10, 2018, was sentenced to 27 years' imprisonment and lifetime supervised release.  Unlike the Defendant, Taylor did not engage in sextortion and Taylor's victims were much older.

In *United States v. Murray*, Crim. No. GJH-16-0317, the defendant, a 22-year-old, used Xbox Live, Kik, Skype, and text messaging to persuade two boys, ages 11 and 14, to send him

_____

[to] or was found guilty of sexual exploitation of children without ever meeting up with the victims." Mem. at 7.  Whatever this resource is, it is either grossly outdated or insufficiently exhaustive.  In either case, it is plainly an insubstantial foundation on which to rest the argument.

images or videos of themselves masturbating; the defendant also convinced the 14-year-old to produce images of himself performing oral sex on the 14-year-old's 4-year-old relative.  Unlike the Defendant in this case, however, Murray did not engage in sextortion or disseminate images of any of this abuse to friends and family members of victims.  Murray pleaded guilty to one § 2251(a) count and, on January 29, 2018, was sentenced to 21 years' imprisonment and lifetime supervised release.

In *United States v. Shumate*, Crim. No. JKB-15-0304, the defendant, 50, used websites and internet-based communications tools for almost two years to coerce multiple girls between 14 and 16 years old to take pictures of themselves engaging in sexually explicit conduct, including inserting hairbrushes into their vaginas.  The defendant pleaded guilty to one § 2251(a) count and, on January 26, 2018, was sentenced to 31 years' imprisonment and lifetime supervised release.

In *United States v. Smiley*, Crim. No. RWT-18-4029, the defendant, 57, used Skype, ooVoo, and Kik to entice four victims between the ages of 12 and 16 to produce images of themselves engaging in sexually explicit conduct.  The defendant pleaded guilty to one § 2251(a) count and, on December 19, 2017, was sentenced to 25 years' imprisonment and lifetime supervised release.  Unlike the Defendant, Smiley did not engage in sextortion or coerce (and then distribute images of) demeaning sex acts.

In *United States v. O'Bannon*, Crim. No. RDB-17-0109, the defendant, 50, used Facebook for approximately 19 months to persuade 17 male and female victims between the ages of 12 and 17 (and located in various regions of the United States and foreign countries) to send him images of themselves engaging in sexually explicit conduct.  The defendant pleaded guilty to one § 2251(a) count and, on November 15, 2017, was sentenced to 20 years' imprisonment and lifetime

supervised release.  Not only were O'Bannon's victims generally older than this Defendant's, but O'Bannon's conduct also did not include sextortion and dissemination of depictions of his abuse.

In *United States v. Conlon*, Crim. No. JFM-17-0027, the defendant was 27 when he began a two-year scheme using various websites and social media applications to coerce approximately 6 male and female victims between 13 and 17 years old to produce images and videos of themselves engaging in sexually explicit conduct, including enticing female victims to insert objects like hairbrushes into their vaginas.  The defendant also sextorted a 13-year-old and 15-year-old victim and sent the images and videos they produced for him to their friends and family members.  Conlon, whose victims were older than most of this Defendant's victims, pleaded guilty to cyberstalking and violating § 2251(a) and, on July 25, 2017, was sentenced to 20 years' imprisonment and 25 years' supervised release.

In *United States v. Andrews*, Crim. No. PWG-16-0281, the defendant admitted that, when he was between 24 and 26 years old, he used a video game system, Skype, FaceTime, and text messages to entice an 11-year-old boy to send him sexually explicit images and videos, and that the defendant attempted to do the same with at least eight other victims under 16 years old.  The defendant pleaded guilty to one § 2251(a) count and, on June 19, 2017, was sentenced to 25 years' imprisonment and lifetime supervised release.  None of Andrews's victims were as young as the youngest victims in this Defendant's case, nor did Andrews's conduct include extortion, dissemination, and degradation of the victims.

In *United States v. White*, Crim. No. RWT-16-0316, the defendant, who was approximately 50 years old, posed as a teenage girl on ooVoo, Instagram, and other social media accounts to entice approximately 15 victims between 12 and 14 years old to send images and videos of themselves engaging in sexually explicit conduct.  The defendant pleaded guilty to one § 2251(a)

count and, on May 31, 2017, was sentenced to 20 years' imprisonment and lifetime supervised release. Not only were White's victims generally older than this Defendant's, but White's conduct also did not include the aggravators present in this case: extortion, dissemination, and degradation of the victims.

In this context, *United States v. Punzalan* and *United States v. Speelman*, relied upon by the Defendant, do not support his argument that "noncontact" § 2251(a) convictions are rare and incur primarily mandatory-minimum sentences. *See* Mem. at 7, 8. First, these types of cases arise frequently and almost never incur mandatory-minimum sentences. Second, the sentences imposed in *Punzalan* and *Speelman* are more than 5 and 10 years old, respectively, which means they were imposed before the significance of deterring this type of contact—in particular, sextortion— became as critical as it is today. *See* U.S. Dep't of Justice, *Nat'l Strategy for Child Exploitation Prevention and Interdiction: A Report to Congress*, 75 (2016) (observing that sextortion is "by far the most significantly growing threat to children"), *available at* https://www.justice.gov/psc/ file/842411/download. Third, *Punzalan* and *Speelman* are distinguishable from this case. Although any effort to compare sentences in different cases imposed on different defendants for different reasons is inherently problematic, the Defendant's suggestion that *Punzalan* and *Speelman* are analogous and, therefore, instructive, is wrong. Both cases involved fewer aggravating circumstances (or more mitigating ones) than are present here.

In *Punzalan*, Crim. No. JFM-14-0252, the defendant, a Philippines national, was between 17 and 18 years old when he used various cellphone applications and social media sites to sextort at least 4 minor females between 12 and 16 years old into producing images of themselves engaging in sexually explicit conduct, including coercing a 14-year-old victim to insert a hairbrush inside her vagina and anus. Punzalan later sent images of the four victims to each of their families

12

and friends.  Punzalan pleaded guilty to one § 2251(a) count and was sentenced on June 25, 2015, to 15 years' imprisonment and lifetime supervised release—but the government anticipates that Punzalan ultimately will be removed from the United States when he is released from the Bureau of Prisons.  By contrast: the Defendant is a U.S. citizen (who, therefore, will remain in the United States when he is released); the Defendant was between 3 and 4 years older than Punzalan at the time the Defendant victimized children; the Defendant sexually exploited children who, at 8, 9, and 11 years old, were much younger than Punzalan's victims; and the Defendant admitted to exploiting a total of between 10 and 50 minors—far more than Punzalan did.[6]

In *Speelman*, Crim. No. DKC-09-0527, the defendant, 52, used a fake identity to establish an online relationship with a 15-year-old girl and enticed her to send him sexually explicit photographs of herself.  Although Speelman later threatened to send the pictures to the victim's family, he never did.  Speelman pleaded guilty to a single count of transportation of child exploitation materials and, on July 20, 2010, was sentenced to the mandatory minimum term of 120 months' imprisonment, and 5 years' supervised release.  Speelman's offense was not remotely as aggravating as the Defendant's conduct in this case.  The Defendant victimized multiple children; all of the Defendant's victims were younger than Speelman's single victim; the Defendant coerced prepubescent children to engage in degrading sex acts; and the Defendant

---

[6] Sometime *after* Punzalan was sentenced, the government learned that one of his victims, a 13-year-old, committed suicide as a result of the emotional distress she suffered from Punzalan's conduct.  In May 2018, a grand jury in the Middle District of Pennsylvania indicted Punzalan on one count of cyberstalking and one count of attempted sexual exploitation of a child in connection with her death.  Accordingly, Punzalan now faces an additional mandatory minimum sentence of 15 years, with a statutory maximum of life imprisonment for cyberstalking result in death.  Because the government did not learn about the victim's tragic death until afterwards, it was not a factor addressed at Punzalan's sentencing.  Nonetheless, it reflects the severe trauma that victims of sextortion suffer at the hands of dangerous sex offenders like Punzalan and this Defendant.

actually disseminated the exploitation materials that he coerced Jane Doe 4, an 11-year-old, to produce through extortion.[7]

Just as it is, therefore, utterly false to suggest that, in the District of Maryland, "noncontact" defendants are very rarely prosecuted under § 2251(a) and receive primarily mandatory minimum sentences, it is equally untrue across the United States.  According to an analysis that is now more than two years old but was focused on federal prosecutions that involved sextortion of minors (thereby excluding all of the other "noncontact" online child exploitation cases), there were at least 50 such convictions between January 2012 and August 2018.  *See* Gov't Sentencing Mem., Exh. 2, *United States v. Killen*, Case No. 1:15-cr-20106-RNS (S.D. Fl. 2018), ECF 177-2.  Each one of the 50 defendants was convicted of violating § 2251(a), and only 8 of the defendants—which included Punzalan—were sentenced to the mandatory minimum.  *See id.*  The vast majority of these sextortionists, however, received significantly longer sentences.  *See Killen*, ECF 177 at 28 (explaining that mean sentence was 32 years' imprisonment, but that sentences imposed were as high as life imprisonment).  And while sextortionists "typically threaten minors ages 10-17," *Nat'l Strategy for Child Exploitation Prevention and Interdiction* 75, this Defendant's youngest victims were—at 8 and 9 years old—even younger than average.  *Cf.* Nat'l Ctr. for Missing & Exploited Children, *The Issues: Online Enticement* (reporting that mean age of online enticement victims

---

[7] Moreover, the subsequent history of Speelman's case establishes that a 10-year sentence was apparently insufficient to adequately deter Speelman or to protect the public from his further criminal conduct.  Speelman began his supervised release on May 16, 2019.  Just seven months later, on January 17, 2020, Speelman's probation officer filed a violation of supervised release petition.  *See* Crim. No. DKC-09-0527, ECF 29.  On February 26, 2020, Speelman's probation officer filed a second petition.  *See* ECF 37.  Among other conduct, the second petition alleges that, between May 16, 2019, and January 2020: Speelman violated the conditions of his supervision by (a) using the internet to communicate with a minor, and (b) conducting searches for child pornography on unauthorized internet-capable devices.  *See id.*  In other words, his probation officer has alleged that Speelman resumed exploiting children as early as the day he was released from prison.

was 15), *available at* https://www.missingkids.org/theissues/onlineenticement (last visited October 16, 2020).  This is not a case where a mandatory minimum sentence is appropriate in light of the factors the Court must consider under § 3553(a).

### III.    The Defendant's Guidelines Arguments Do Not Support an Extreme Downward Variance to the Mandatory Minimum.

Even though the Defendant has stipulated to the guidelines calculation set forth in the PSR, the Defendant argues that the guidelines overstate the seriousness of his crimes because his offense conduct "is being equated with that of an offense in which the conduct is direct hands-on contact between offender and victim," Mem. at 15, or certain enhancements are "present in almost every case," Mem. at 12.  These arguments do not justify an extreme downward variance to the mandatory minimum sentence.

First, the Defendant challenges the sex-act enhancement under U.S.S.G. §2G2.1(b)(2)(A).  But he does not dispute that his offense involved the commission of multiple sex acts.  Instead, the Defendant argues that, because "this enhancement applies in nearly every case," it is "effectively included in the base offense level" and, therefore, "tends to overstate the seriousness of the offense."  Mem. at 12–13.  In fact, this enhancement is applied in approximately 53.5% of production cases—hardly "nearly every case," as the Defendant insists.  *See* U.S. Sentencing Comm'n, *Use of Guidelines and Specific Offense Characteristics: Fiscal Year 2019* at 43, *available at* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/guideline-application-frequencies/2019/Use_of_SOC_Guideline_Based.pdf.  But, even if the enhancement did apply in "nearly every case," it would have been within the discretion of the Sentencing Commission to "effectively include[]" the commission of sex acts in the base offense level.  Nor is there merit in the Defendant's complaint that he "never actually physically contacted the victims, nor did anyone else."  Mem. at 12.  The Defendant coerced Jane

Doe 2 and Jane Doe 4 to insert foreign objects into their vaginas.  These were no less sex acts because the Defendant caused these vulnerable victims to commit them on themselves.

Second, the Defendant challenges his §2G2.1(b)(4)(A) enhancement for the portrayal of sadistic or masochistic conduct by emphasizing that conduct "over the internet" is different from in-person conduct.  Mem. at 13.  But the enhancement's applicability is not limited to "in-person" conduct; it applies whenever the offense involves sadistic or masochistic conduct—however it occurs.  Yet 84.3% of "production" offenses do not involve sadistic or masochistic conduct at all. *See Use of Guidelines and Specific Offense Characteristics* 43.  Thus, rather than overstating the seriousness of his crimes, this enhancement accurately reflects that the Defendant's conduct places him in a distinguished category occupied by only 15.7% of all "production" defendants.  Indeed, the degrading things the Defendant coerced Jane Doe 2 and Jane Doe 4 to do are important reasons why this case is worse than other purportedly similar online exploitation cases or sextortion cases.

Third, the Defendant challenges §2G21.(b)(6)(B) because "the computer enhancement is essentially included in the base offense level" and, therefore, "overstates the seriousness of the offense."  Mem. at 14.  This challenge is fundamentally irrelevant because the Defendant also misrepresented his identity to exploit the victims; accordingly, the same two-level enhancement would apply regardless of whether the Defendant also used a computer to do so.  *See* U.S.S.G. §2G2.1(b)(6)(A).  Still, the Defendant is also wrong as a factual matter: §2G2.1(b)(6)(B) is applied in only about 19% of "production" cases.  *See Use of Guidelines and Specific Offense Characteristics* 43.  Moreover, the Defendant's use of a computer was not incidental to his exploitation of children; it was central.  If anything, application of §2G2.1(b)(6)(B) is more appropriate here than in a case where a "contact" offender merely uses a device to document abuse. In any event, had the Sentencing Commission decided to "essentially include[]" the enhancement

in the base offense level, that would have been its prerogative, and the Defendant cites no authority stating otherwise.

Fourth, the Defendant complains that the §4B1.5(b)(1) enhancement for repeat and dangerous sex offender[s] against minors overrepresents the dangerousness of "internet-only" offenders.  Mem. at 14.  According to the Defendant, "internet-only" offenders "tend to communicate with more victims, but cause less harm because the victims can block [them] and permanently end the communications." *Id.*  This argument is nonsensical and meritless.  It is nonsensical because a sex offender who is blocked from communicating with a victim has not "engaged in a pattern of activity involving prohibited sexual conduct," which the guidelines define as "at least two separate occasions [where] the defendant engaged in prohibited sexual conduct with a minor."  U.S.S.G. §4B1.5(b), cmt. n.4(B)(i).  It is meritless because, as the Defendant's own conduct demonstrates, a victim cannot realistically "block" a sextortionist who threatens to disseminate—or does disseminate—embarrassing or humiliating images of the victim.  It is also meritless because it is self-defeating.  If the Defendant is correct that "internet-only" offenders like himself tend to exploit *more* victims, then these are precisely the repeat offenders who *should* be targeted by an enhancement for dangerous sex offenders against minors.  Having sexually exploited somewhere between 10 and 50 victim children on multiple occasions over the course of 18 months, the Defendant cannot credibly complain when he is deemed to be a repeat offender.

Fifth, even if the Defendant is right that courts in this District often vary below the guidelines in § 2251(a) cases, which frequently advise life imprisonment, the observation does not justify the extreme downward variance—to the mandatory minimum sentence—that he seeks here. *See* Mem. at 17.  As the discussion above established, the Defendant is simply incorrect to suggest that comparable § 2251(a) offenses "have resulted in sentences at or near the statutory mandatory

minimum sentence." *Id.* In urging otherwise, the Defendant string-cites a handful of Maryland prosecutions from the first decade of the 21st century, but—with the exception of *Punzalan*, which the government has already distinguished—ignores all of the sentences that have been imposed in internet-based § 2251(a) prosecutions since the year 2010. The Defendant's omission is significant because minors' access to internet-based communications tools has skyrocketed since 2010—as the Defendant appears to acknowledge, *see* Mem. at 6—and, as early as 2016, sextortion had become the fastest growing exploitation threat to children. Accordingly, the need to protect the public from this type of criminal conduct and to afford adequate deterrence both specifically and generally is far more important now than it was in prior decades.[8]

In any event, the Defendant is not "similarly situated" to the defendants identified in the cases the Defendant suggests are "[c]omparable." *See* 18 U.S.C. § 3553(a)(6) (underscoring "need to avoid *unwarranted* sentence disparities among defendants with similar records who have been found guilty of *similar* conduct") (emphasis added).

In *United States v. Fleck*, Crim. No. AMD-04-0491, the defendant, 60, misrepresented his identity through Compuserve and AOL accounts to entice four victims between 13 and 17 years old to send him visual depictions of themselves engaging in sexually explicit conduct. Fleck lured one of his victims to his residence, where he took pictures of her engaging in sexually explicit conduct (though there is no evidence that Fleck engaged in any sexual contact with the victim).

---

[8] The Defendant claims—without citing authority—that, because "general deterrence only functions with notice," and "Congress has not enacted a proper general deterrence policy for these types of offenses," first time offenders like the Defendant "face extreme sentences for a crime he would have never committed if he were aware of the disproportionate penalties." Mem. at 23–24. Insofar as the Defendant suggests that he lacked sufficient "notice" that sexually exploiting prepubescent minors, coercing them to engage in degrading sex acts, and utterly humiliating young children by disseminating images of their abuse to their families and friends represent extremely serious crimes, the Defendant betrays a level of dangerousness that warrants a sentence far above the mandatory minimum required by statute.

When Fleck pleaded guilty to one § 2251(a) count and one count of attempt to transport child exploitation material, in violation of § 2252(a)(1), the mandatory minimum was 10 years, and the statutory maximum was 20 years. On January 5, 2007, then-Judge Andre M. Davis sentenced Fleck to 14 years' imprisonment and lifetime supervised release—the top of the applicable guidelines range. Not only is this Defendant decades younger, and, therefore, more dangerous, but the Defendant also exploited more victims; the Defendant's victims were much younger than Fleck's; the Defendant caused prepubescent children to engage in demeaning sex acts; and the Defendant extorted and disseminated sexually explicit images and videos of an 11-year-old girl.[9] *Cf. also, e.g.*, *United States v. Patrick*, Crim. No. RDB-09-0501 (imposing 122-month sentence for *§ 2252(a)(2)* conviction, where defendant created fake profile on social networking website to entice three minors between 16 and 17 years old to send him photographs of themselves engaging in sexually explicit conduct).

The Defendant here also relies on *United States v. Foote*, Crim. No. MJG-05-0005, in which the defendant, 28, sexually abused his 18-month-old niece and took photographs of the abuse. Foote pleaded guilty to one § 2251(a) count and, on July 22, 2005, was sentenced to 210 months' imprisonment (and not—as the Defendant claims—180 months, *see* Mem. at 17) and lifetime supervised release. But Foote is not an online enticement or sextortion case. Rather than supporting the Defendant's request for a mandatory minimum sentence, *Foote* illustrates the folly

---

[9] As with *Speelman*, the subsequent history of Fleck's case proves that Fleck's 14-year sentence plainly was insufficient to adequately deter Fleck or to protect the public from his further criminal conduct. Fleck began his supervised release on January 29, 2016. On February 19, 2020, this Court found that Fleck began violating his supervised release conditions "almost immediately" after his release. *See* Feb. 19, 2020, Hr'g Tr. 153:3–10, Crim. No. CCB-04-0491, ECF 188. Among other violations, the Court found that Fleck had knowingly viewed and possessed child exploitation materials in July 2018—roughly 18 months after his release from BOP. *See* Judgment, ECF 189. Accordingly, the Court sentenced the Defendant to 2 years' imprisonment—the statutory maximum sentence—and re-imposed lifetime supervised release. *See id.*

that inheres in comparing defendants who are not similarly situated.  First, most "hands-on" § 2251(a) convictions in this District result in far higher sentences than are contemplated by the parties in this case—a fact conveniently ignored by the Defendant.  Second, it is impossible to say that "hands-on" offenses are categorically "worse" than online enticement and sextortion cases. The argument easily could be made that, as horrific as Foote's conduct was, the Defendant's conduct here was much more serious—and, therefore, deserving of far greater punishment— because he victimized many more children, the victims are old enough to remember their sexual exploitation, and the Defendant publicly abused and humiliated Jane Doe 4.  The same argument could be made to show that the other "hands-on" cases cited by the Defendant are less severe.  *Cf. United States v. Burnett*, Crim. No. ELH-09-0573 (imposing 15-year sentence on defendant who recorded video of himself touching "inner thigh" of 8-year-old neighbor); *United Sates v. Williams,* Crim. No. CCB-05-0172 (imposing 15-year sentence for conviction on single § 2251(a) count for recording sexual abuse of single 13-year-old, where defendant had simultaneously received 15- and 32-year state sentences for contemporaneous abuse of other minors).

The Defendant's reliance on sentences in human trafficking cases is misplaced for the same reason:  These defendants are not similarly situated to him.  As an initial matter, the Defendant selectively identifies a handful of sentences in the District of Maryland—which prosecutes more human trafficking cases than nearly any other district in the country—and suggests that they are representative of human tracking sentences generally.  They are not.  And none of the cases cited by the Defendant were charged in the past six years.  *See* Mem. at 18–19.  But even if the Defendant's citations did accurately reflect the sentencing landscape, they would not justify a mandatory minimum sentence in this case.  Human trafficking cases, including the ones cited by the Defendant, are not similar in nature to online exploitation or sextortion cases generally, nor are

they comparable to this case in particular.  Human trafficking cases typically have fewer victims, the victims are mostly older and present more complicated backgrounds, and human trafficking sentences are governed by completely separate statutory and guidelines regimes.  Accordingly, a 27-year sentence is not disproportionate punishment relative to a hypothetical human trafficking sentence because the Defendant was not convicted of similar conduct.  *See* 18 U.S.C. § 3553(a)(6).

**IV.** ██████████████████████████████████
███████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
██████████████████████████





### V.   __Restitution__

The Defendant has acknowledged that Jane Doe 1, Jane Doe 2, and Jane Doe 4 are entitled to mandatory restitution under 18 U.S.C. §§ 3663A and 3771.  *See* Plea Agreement ¶ 14.  The Defendant has also agreed to the entry of a restitution order "for the full amount of the losses incurred" by Jane Doe 3, Jane Doe 5, and Jane Doe 6 as a result of the offense conduct identified in the Plea Agreement, which could include medical bills or compensation for time missed from work.  *Id.*  Based on its outreach to the victims in this case, the government is aware that at least two victims, Jane Doe 1 and Jane Doe 3, are planning to make restitution requests.  But the government has not yet determined the amount of each victim's loss.  Accordingly, the government respectfully requests that the Court set a date for the final determination of the victims' losses, not to exceed 90 days after sentencing.   *See* 18 U.S.C. § 3664(d)(5).   There is good cause for continuing the proceedings to determine restitution because (1) the victims are minors, (2) they are located all over the country, and (3) the circumstances accompanying the COVID-19 pandemic



have made it more difficult to collect restitution information.  If, however, the government is able to ascertain the full amount of each victim's loss and the parties reach an agreement on a proposed restitution order, the government will advise the Court immediately.

**VI.**     **Conclusion**

For the reasons set forth above and in its Sentencing Memorandum, the government requests that the Court sentence the Defendant to 324 months' (*i.e.*, 27 years') imprisonment and lifetime supervised release.

Respectfully submitted,

Robert K. Hur
United States Attorney

By:

Jeffrey J. Izant
Paul E. Budlow
Assistant United States Attorneys